# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| ANASTACIO ACOSTA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. EP-19-CV-00166-DCG |
| | § | |
| BNSF RAILWAY COMPANY, | § | |
|     Defendant. | § | |

## REPORT AND RECOMMENDATION
## OF THE MAGISTRATE JUDGE

On this day, the Court considered "BNSF Railway's Motion to Dismiss" ("Motion"), filed by Defendant BNSF Railway Company ("BNSF") on June 19, 2019. (ECF No. 2). The matter was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of Appendix C of the Local Court Rules for a Report and Recommendation on September 13, 2019, by United States District Judge David C. Guaderrama. (ECF No. 5).

For the reasons set forth below, the Court **RECOMMENDS** that Defendant BNSF Railway's Motion to Dismiss be **GRANTED**.

## I.    BACKGROUND[1]

### a.    Factual Background

On March 29, 2019, Public Law Board 7048 ("Board") issued Award No. 237 ("Award"). (ECF No. 1-1, p. 2).[2] The "Brotherhood of Maintenance of Way Employes [sic] Division – IBT Rail Conference" ("BMWED") brought a claim on Plaintiff Anastacio Acosta's ("Acosta") behalf against BNSF. (*Id.*). Acosta was terminated from his employment at BNSF as a Flagman on June 1, 2017, for allegedly not using his phone in hands-free mode while operating a company vehicle,

---

[1] While recounting the background, the Court addresses only the facts relevant to the immediate Report and Recommendation.
[2] Unless otherwise indicated, all facts come from the Award.

1

in violation of policy. (*Id.* at 6-8). The Board found that BNSF "did not meet its burden of proof that [Acosta] was guilty of the charges." (*Id.* at 9). The Board held that Acosta was to "be returned to service with seniority intact, all benefits unimpaired and made whole for loss of all monies since being taken out of service until reinstated in accordance with the Agreement." (*Id.*). The Award further directed BNSF "to make the Award effective on or before 30 days following the date the Award was signed by the parties." (*Id.*).

In his "Petition to Confirm Arbitration Award" ("Petition"), Acosta seeks "damages awarded by the [Public Law Board] in Award No. 237 and that the Court find reinstatement an unfit remedy and award front pay as the more reasonable remedy for economic damages in the future."[3] (ECF No. 1-1, p. 4). Further, Acosta seeks a back-pay award of "at least $254,400.00." (*Id.* at 3). Finally, Acosta seeks an award of front pay in the amount of $960,000.00.[4]

**b.    Procedural Background**

On May 20, 2019, Acosta filed his Petition in the 168th District Court in El Paso County, Texas. (ECF No. 1-1). On June 18, 2019, BNSF filed a Notice of Removal and removed the action to federal court based on federal question jurisdiction. (ECF No. 1).[5]

The Motion to Dismiss and the attached "Declaration of Joe Heenan" ("Declaration") were filed by BNSF on June 19, 2019.[6] (ECF Nos. 2, 2-1). Therein, BNSF requests the Court dismiss Acosta's Petition for lack of subject matter jurisdiction, or in the alternative, remand the matter to the Board for interpretation of the Award. (*Id.* at 15). On June 26, 2019, Acosta filed "Plaintiff's

---

[3] Acosta also seeks "reasonable and necessary attorney's fees, interest on monies delayed by BNSF in payment, together with interest as allowed by law, costs of court, and such other and further relief to which the Plaintiff may be justly entitled at law or in equity." (ECF No. 1-1, p. 5).
[4] Acosta arrives at this figure from a claimed rate of $127,200.00 for 2017 if he had worked the full year, offset by $31,200.00 per year because of his present employment, for a period of ten years. (ECF No. 1-1, p. 3).
[5] The Notice of Removal states that "[d]efendant BNSF received a courtesy copy of the State Court Action on May 22, 2019. BNSF has not received formal service of the State Court Action." (ECF No. 1, p. 1).
[6] Joe Heenan is BNSF's "General Director Labor Relations – Non-operating Crafts." (ECF No. 2-1, p. 2). Further, the Declaration is made under penalty of perjury. (*Id.* at 7).

Response to Defendant's Motion to Dismiss" ("Response") (ECF No. 3), as well as an Arbitration Award dated March 29, 2019 (ECF No. 3-1).  Thereafter, BNSF filed "BNSF Railway's Reply Supporting the Motion to Dismiss" ("Reply") on June 28, 2019.  (ECF No. 4).

## II.     LEGAL STANDARD

A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (*per curiam*) (citing Fed. R. Civ. P. 12(b)(1)).  "The party asserting jurisdiction 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (quoting *Ramming*, 281 F.3d at 161). Further, "[w]hen ruling on the motion, the district court may rely on the complaint, undisputed facts in the record, and the court's resolution of disputed facts." *Id*.  Finally, "[t]he motion should be granted only if it appears certain the plaintiff cannot prove any set of facts that would entitle her to recovery." *Id*.

When making "a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  This "factual attack" obligates the plaintiff "to submit facts through some evidentiary method . . . ." *Id*.  Further, the "factual attack" places on the plaintiff "the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id*.  When considering a "factual attack" to its jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *see Three Expo Events, L.L.C. v. City of Dallas, Texas*, 907 F.3d 333, 343 (5th Cir. 2018).

## III. ANALYSIS

Acosta and BNSF are an employee and a carrier, respectively, within the meaning of the Railway Labor Act ("RLA"). (ECF No. 1-1, p. 5); 45 U.S.C. § 151. Pursuant to the RLA, when there is a dispute that cannot be resolved between the carrier and the employee, the matter is referred to the "appropriate division" of the National Railroad Adjustment Board ("NRAB"). 45 U.S.C. § 153(i). The NRAB and its divisions have the authority to enter an award resolving the dispute. 45 U.S.C. § 153(m). After an award is made, district courts have jurisdiction to enforce the NRAB's award. 45 U.S.C. § 153(p).

The jurisdiction that the courts possess and the scope of the review permitted over the decisions of the NRAB is "among the narrowest known to the law." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 92 (1978) (*per curiam*); *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970). The NRAB "is an expert body designed to settle 'minor' disputes that arise from day to day in the railroad industry." *Diamond*, 421 F.2d 228 at 233 (5th Cir. 1970). A "disagreement about the meaning of an award amounts to disagreement about the meaning of the underlying collective bargaining agreement. Under the RLA such disagreements are 'minor disputes' that the parties and the Board must resolve without judicial aid or interference." *Bhd. of Maint. of Way Emps. v. Burlington N. R. Co.*, 24 F.3d 937, 938 (7th Cir. 1994) (citing *Consolidated Rail Corp. v. Railway Labor Executives' Association*, 491 U.S. 299, 302–03 (1989)). Further:

> where the award is ambiguous, but can be clarified by reference to extrinsic evidence not involving the special expertise of the board, . . . the district court may proceed to resolve the conflict in an enforcement proceedings. However, where, . . . the award is too indefinite to be enforced, and cannot be made definite by considering nonspecialized extrinsic evidence, then the court should remand to the board for clarification of the award.

*United Transp. Union v. S. Pac. Transp. Co.*, 529 F.2d 691, 693 (5th Cir. 1976). Finally, the "judicial duty to enforce an arbitration award [under the RLA] . . . is neither a duty nor a license

to interpret it." *Bhd. of Maint. of Way Emps.*, 24 F.3d at 939 (internal quotation omitted) (alterations in original).

BNSF's Motion and Reply address three distinct issues raised by Acosta's Petition, each of which BNSF asserts is beyond the narrow scope of judicial review permitted by the RLA because of uncertainties about the Award that require interpretation. These issues are "the proper date of reinstatement," the calculation of back pay,[7] and "whether a front-pay claim is even possible." (ECF No. 4, p. 1); *see* (ECF No. 2, p. 11-13). In response to BNSF's Motion and legal authorities, Acosta's entire Arguments and Authorities section reads "[t]his case was removed from state court. The determination of whether or not to confirm the Arbitration Awards 237 and enforce the back pay of $254,400.00 requires no further action by the Public Law Board 7048 and is ripe for a confirmation from this Court." (ECF No. 3, p. 1). Acosta also attaches the same Award originally attached to his Petition. (ECF No. 3-1). The Court finds that each of the three issues raised create a separate and alternative basis for remanding Acosta's Petition to the Board for interpretation and clarification.

    **a.    Proper Date of Reinstatement**

The Award directs BNSF "to make the Award effective on or before 30 days following the date the Award was signed by the parties. (ECF No. 1-1, p. 9). BNSF's Motion sets-out the "basic framework" of its reinstatement process and its six general steps:

> To be reinstated, the employee: (i) is notified of the favorable arbitration award, (ii) given a fixed amount of time to let BNSF know they intend to come back (or "mark up"); (iii) clears any required medical evaluations to assess fitness for duty; (iv) takes and passes craft-specific rules testing; (vi) (sic) verifies any necessary certifications are active (e.g., DOT/CDL, engineer's license, etc.); and (vii) (sic) meets with local supervision concerning some form of re-entry interview.

---

[7] BNSF terms this consideration "the amount of lost earnings [and] whether any pay offsets apply." (ECF No. 4, p. 1).

(ECF No. 2, p. 4). BNSF alleges that it began the process of reinstating Acosta through a letter dated April 10, 2019, and received by Acosta on April 12, 2019. (*Id.*). Further, BNSF contends that once Acosta completes his re-entry interview, "he will be cleared to return to work." (*Id.*). Finally, BNSF argues that "during the past 20 years, BMWED has not challenged BNSF's right to employ a return-to-work framework that includes all of the areas set out above (medical testing, rules testing, certification checks, and local interviews)." (*Id.*). In his Response, Acosta asserts that "[a]t a minimum, Defendant is delinquent by 69 days for the payment of back-pay . . . ." (ECF No. 3, p. 2).

In *Brotherhood of Maintenance of Way Employees Division/IBT v. BNSF Railway Company*, the court considered an award with almost identical "make effective" language and addressed the alleged ambiguity found in the award directing BNSF to "make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties."[8] *Bhd. of Maint. of Way Employees Div./IBT v. BNSF Ry. Co.*, No. 11-CV-8211, 2012 WL 2128424, at *2 (N.D. Ill. June 11, 2012). The Defendant in *Brotherhood* alleged that "it arguably complied with the Board's order by beginning the return-to-work process within 30 days of receipt of the award and by completing the process in a timely manner." *Id.* The court found that it was "reasonable to assume that the Board's directive to 'make the Award effective on or before 30 days' still permitted some flexibility and required [the employee] to comply with reasonable requests to process his reinstatement." *Id.*

The Court agrees with the reasoning in *Brotherhood*. Acosta does not challenge BNSF's contention that Acosta started the general steps towards reinstatement. *See* (ECF No. 2, p. 5);

---

[8] The Court notes that the union plaintiff in *Brotherhood* appears to be the same union that BNSF alleges in its Motion "has not challenged BNSF's right to employ a return-to-work framework that includes all of the areas set out above (medical testing, rules testing, certification checks, and local interviews)." (ECF No. 2, p. 5).

(ECF No. 3). Further, Acosta does not challenge BNSF's contention that once he completes his "re-entry interview," then "he will be cleared back to work." *Id*. Whether BNSF has complied with its obligations under the Award, whether its reinstatement process is permissible under the Award, and whether Acosta has been justified in not completing his re-entry interview, "is for another body to sort out. For now, it is sufficient that BNSF has an arguable basis for its position." *Brotherhood*, 2012 WL 2128424 at *2.

   b.   **Calculation of Back Pay**

The parties disagree over the proper measure of back pay to which Acosta is entitled. BNSF contends that calculating the amount of back pay is "fairly complicated, and sometimes requires negotiation with the Union." (ECF No. 2, p. 5). BNSF then describes the general calculation process, including determining comparators, negotiating with the Union, and the continued use of the arbitrators to reach the final amount of back pay. *See* (*Id*. at 5-7). In his Petition, Acosta asserts that he is entitled to $127,200.00 per year in back pay, for an amount of at least $254,400.00, based on the amount he had already made in 2017.[9] (ECF No. 1-1, p. 3); *see* (ECF No. 3, p. 2). BNSF contests the monetary figure Acosta claims, and the attached declaration of Joe Heenan states that "$127,000 annually is an extraordinarily high back pay figure . . . ." (ECF No. 2-1, p. 6); *see* (ECF No. 2, p. 13).

"The District Court has authority under the Railway Labor Act to determine the amount of that [back pay] award . . . ." *Hodges v. Atl. Coast Line R. Co.*, 363 F.2d 534, 540 (5th Cir. 1966) (citing *Gunther v. San Diego & A. E. Ry. Co.*, 382 U.S. 257, 264–65 (1965)). However, the Award is silent as to how to calculate the back pay to which Acosta is entitled, merely directing that

---

[9] Of note, Acosta seeks a full annualized figure of $127,200.00 in back pay but offsets his front pay request by the amount he is currently making, $31,200.00, with no explanation as to why the front pay amount should be offset while the back pay is not subject to offset. *See* (ECF No. 1-1, p. 3); (ECF No. 3, p. 1-2).

7

Acosta is to be "made whole for loss of all monies since being taken out of service until reinstated in accordance with the Agreement." (ECF No. 1-1, p. 9).

The court in *Johnson v. CSX Transportation, Inc.* dealt with a similar situation where "[t]he [a]ward did not instruct CSX how to calculate Johnson's back pay." *Johnson v. CSX Transp., Inc.*, No. CIV. WDQ-10-0777, 2011 WL 2619553, at *2 (D. Md. June 30, 2011). The *CSX* court held that "[t]o determine whether Johnson should have been paid based on the rate of his average earnings or his most recent assignment would require the Court to interpret the [a]ward and speculate about the calculation method the Board intended; the Court cannot do this." *Id*. The *CSX* court then "remanded [the award] to the Board to determine the method CSX should have used to calculate Johnson's back pay." *Id*.

Similarly, in *Brotherhood of Locomotive Engineers and Trainmen v. Union Pacific Railroad Co.*, the Seventh Circuit faced an award that did not specify the amount of back pay to be awarded nor the amount to deduct for earnings after the termination and before reinstatement. *Bhd. of Locomotive Eng'rs. & Trainmen v. Union Pac. R. Co.*, 707 F.3d 791, 793 (7th Cir. 2013). The parties in *Union Pacific* explained to the Seventh Circuit that the reason for the omission was:

> to expedite the arbitral proceeding. All that the Board decides is whether the employee is entitled to reinstatement with back pay; if it decides in his favor, the determination of the amount of back pay is left for the parties to work out. If they can't work it out they can go back to the Board.

*Bhd. of Locomotive Eng'rs. & Trainmen*, 707 F.3d at 795 (citing 45 U.S.C. § 153(m)).

The parties dispute the proper basis for calculating the amount of Acosta's back pay. Acosta contends that it should be based on the amount he had already earned before his termination in 2017. (ECF No. 3, p. 2). BNSF contends both that the amount Acosta requests in back pay is "extraordinarily high" and that the proper measure of damages is through the use of comparators, "simply the persons on the seniority roster immediately above and below the reinstated employee."

8

(ECF No. 2-1, p. 6); (ECF No. 2, p. 6).  The Award is silent on this issue.  *See* (ECF No. 1-1, p. 9).  Therefore, resolving this dispute would "require the Court to interpret the Award and speculate about the calculation method the Board intended; the Court cannot do this."  *CSX*, 2011 WL 2619553 at * 2.

      **c.**      **Front Pay in Lieu of Reinstatement**

Acosta's Petition alleges that he "would show the Court that front pay is the preferred remedy when all trust has been lost as it has here, between Acosta and BNSF."  (ECF No. 1-1, p. 3).  Acosta's Petition then requests ten years of front pay (offset by current earnings) in lieu of reinstatement.  (*Id*.).  BNSF contends that there is a dispute over "whether any front pay is owed."  (ECF No. 2, p. 13).

The Award is silent on the possibility of front pay in lieu of reinstatement.  *See* (ECF No. 1-1, p. 9).  The Award specifically directs that Acosta is to "be *returned to service* with seniority intact, all benefits unimpaired and made whole for loss of all monies since being taken out of service *until reinstated* in accordance with the Agreement."  (ECF No. 1-1, p. 9) (emphasis added).  By its own terms, it is clear that the Award, as decided by the Board, anticipates Acosta being reinstated.  "[I]f a violation of the collective bargaining agreement is shown, the arbitrators may determine the remedy.  *Bhd. of Locomotive Engineers v. St. Louis Sw. Ry. Co.*, 757 F.2d 656, 661 (5th Cir. 1985); *see Bhd. of R. R. Trainmen v. Cent. of Georgia Ry. Co.*, 415 F.2d 403, 415 (5th Cir. 1969) ("Arbitrators, all parties concede, need not confine themselves to common-law remedies.").  Through his request for front pay instead of reinstatement, Acosta appears to be asking the Court to either vacate the Award and rewrite the Award with a provision for front pay or interpret the Award as allowing front pay.

Both the requested interpretation and the vacating and rewriting of the award are beyond the scope of relief that this Court can grant. A court is only permitted to set aside the decision of the NRAB or its subdivisions for "failure of the division to comply with the requirements of [the RLA], for failure of the order to conform, or confine itself to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order." 45 U.S.C. § 153(p); *see Diamond*, 421 F.2d at 233 ("Judicial review of orders is limited to three specific grounds: (1) failure of the Board to comply with the Act, (2) fraud or corruption, or (3) failure of the order to conform, or confine itself, to matters within the Board's jurisdiction."). Acosta does not allege in his Petition or his Response any of the three circumstances described above that would permit the Court to set aside the Award. Instead, Acosta merely asserts that he "would show the Court that front pay is the preferred remedy when all trust has been lost as it has here, between Acosta and BNSF." (ECF No. 1-1, p. 3). Accordingly, the Court finds that it lacks jurisdiction to vacate and rewrite the Award as requested by Acosta.

Similarly, the Court is without jurisdiction to interpret the Award and determine if front pay in lieu of reinstatement is permissible. The "judicial duty to enforce an arbitration award [under the RLA] . . . is neither a duty nor a license to interpret it." *Bhd. of Maint. of Way Emplys.*, 24 F.3d at 939 (quotation omitted) (alterations in original). Acosta contends in his Petition that he "would show the Court that front pay is the preferred remedy when all trust has been lost as it has here, between Acosta and BNSF." (ECF No. 1-1, p. 3). This contention is a clear request to interpret the Award as allowing a remedy not mentioned by the Board in the Award. Whether this interpretation of the Award is permissible cannot be determined without "the special expertise of the board," and, therefore, "the court should remand to the board for clarification of the award." *United Transp. Union v. S. Pac. Transp. Co.*, 529 F.2d at 693.

Assuming *arguendo* that front pay is a remedy available to Acosta under the Award, the award of front pay is too indefinite as to its amount and cannot be made definite without the special expertise of the Board and, therefore, remand to the Board for clarification of the Award is necessary. *See id*. The Award provides no basis for determining the amount of front pay to which Acosta would be entitled. To arrive at a figure for the amount of front pay would "require the Court to interpret the Award and speculate about the calculation method the Board intended; the Court cannot do this." *CSX*, 2011 WL 2619553 at * 2.

### d. Remanding Acosta's Claim to the Board is Appropriate

The unknown proper date of reinstatement for Acosta, the unknown proper calculation method for the back pay Award, and the unclear availability of front pay in lieu of reinstatement for Acosta each prevent the Court from having jurisdiction over Acosta's claim. While 45 U.S.C. § 153(p) "does not expressly give the enforcing court any power to remand an award to the adjustment board, it has been held that a court acting under this section may avail itself of the remand power given in 45 U.S.C. [§ 153](q). *United Transp. Union*, 529 F.2d at 693 (5th Cir. 1976). The resolution of this dispute requires the interpretation of the Award. Accordingly, the matter should be remanded to the Board. Should the Board determine that Acosta's claim is a new "minor dispute" and not merely a request for interpretation of the Award, "it can instruct the Union to file a new grievance." *Bhd. of Maint. of Way Empls. Div./IBT*, 2012 WL 2128424 at *3 (citing *Bhd. Ry. Carmen Div., Transp. Commc'ns Int'l Union, AFL-CIO v. Atchison, Topeka & Santa Fe Ry. Co.*, 956 F.2d 156, 160-61 (7th Cir. 1992)).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Acosta has not met his burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction over his claim.

Accordingly, the Court **RECOMMENDS** that Defendant BNSF Railway Company's Motion to Dismiss be **GRANTED** and that the claim be **REMANDED** to the Board for further proceedings.

**SIGNED** and **ENTERED** this 15th day of October, 2019.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**